IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Katrina J. McVicker,
et al.,

      Plaintiffs,

      v.              Case No. 2:08-cv-1110

Michelle Hartfield,

et al.,

      Defendants.


<u>OPINION AND ORDER</u>

This is a <u>pro</u> <u>se</u> action filed by plaintiffs Katrina J. McVicker and her son, Justin M. McVicker, residents of Newark, Ohio, located in Licking County, Ohio. Named as defendants in the caption of the complaint are Michelle Hartfield, Michael Phillips, and Eric Stewart. The complaint does not identify who these individuals are or state where they are employed or what relationship they have to the allegations in the complaint. The Licking County Department of Job and Family Services ("Licking County DJFS") is the next defendant listed in the caption. It is not clear if the Licking County DJFS is named as a defendant, or if it is listed simply to identify the place of employment of the aforementioned individual defendants. These defendants will be referred to collectively as the "Licking County defendants."

The caption also lists "Bob Taft (past Governor)" as a defendant. Finally, the complaint names "Gladys Smith" followed by "Job and Family Services[,] Franklin[] County, Ohio." The complaint does not identify who Ms. Smith is or state how she is related to the allegations in the complaint. However, the record

includes a return of service form (Doc. No. 8) addressed to Gladys Smith as a hearing officer at 30 East Broad Street, 31st Floor, Columbus, Ohio 43215. This is an address located in Franklin County, Ohio. The local telephone directory indicates that 30 East Broad Street is the address for the State of Ohio Department of Job and Family Services ("ODJFS"), an agency of the State of Ohio. The record also includes a return of service form addressed to then Ohio Attorney General Nancy Rogers. Thus, it appears that the reference to "Job and Family Services" in Franklin County is intended to be a reference to the state agency, not the Franklin County Department of Job and Family Services. It is not clear whether ODJFS is named as a defendant or simply referred to as Ms. Smith's place of employment. It is also not clear whether plaintiffs intended to name the State of Ohio as a defendant. These defendants will be referred to collectively as the "state defendants."

Plaintiffs allege that they are Medicaid recipients, and that they were refused medical equipment, health care, nurse's aid services and emergency medical coverage to which they were entitled. Plaintiffs allege that the defendants sent a subpoena to plaintiff Katrina McVicker's insurance company, forging a form to change the terms of her policy and taking her property without her knowledge. Complaint, Paras. 4 and 5. Plaintiffs further alleged that defendants removed and concealed a letter from their files, made false statements concerning a letter sent by plaintiff concerning a lift or cushion for a wheelchair, and told Ms. McVicker that the insurance money belonged to the State of Ohio. Complaint, Paras. 6-9. Plaintiffs also allege that the Medicaid benefits of Justin McVicker, the disabled son of Ms. McVicker, were

terminated on March 18, 2005, when he turned eighteen years of age, and that his request for reinstatement was denied in September of 2005 after the family house was put in his name and sold. Complaint, Paras. 10-12. Plaintiffs further allege that defendants "refused to do compliance on two State hearings that were sustained with compliance on May 31, 2007," thereby causing the denial of benefits for medical treatment for Justin McVicker and the reduction of Ms. McVicker's income for eighteen months. Complaint, Para. 13. The complaint does not identify which of the defendants named in the caption performed any of the acts alleged in the complaint.

Plaintiffs allege in general terms that they were "discriminated against," assert a claim for "due process," and allege that several Ohio criminal statutes were violated by the defendants. Plaintiffs seek a temporary restraining order and permanent injunction to prevent any further illegal actions by the defendants; and any other damages permitted by law, including payment of a nurse's aide and a caregiver, and reimbursement of Medicare for the purchase of a wheelchair, manual lift and cushion. Plaintiffs' complaint was also docketed as a motion for a temporary restraining order.

The State of Ohio (ODJFS) and defendant Taft have filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief may be granted. Defendant Taft has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(5) for failure to timely perfect service of process as required under Fed.R.Civ.P. 4. ODJFS also filed a motion to dismiss and notice of failure to perfect service on

Gladys Smith, stating that Ms. Smith is not currently employed by ODJFS. The Licking County defendants have filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). They have also moved for the dismissal of the complaint against defendant Phillips for failure to perfect service, asserting that Mr. Phillips is no longer employed by the Licking County DJFS.

I. Motions to Dismiss and for Judgment on the Pleadings

A. Standards for Motions under Fed.R.Civ.P. 12(b)(1), 12(b)(6) and 12(c)

The state defendants have filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) on the grounds of Eleventh Amendment immunity. Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. DXL, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004); Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

The state defendants have also moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief may be granted. In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations

4

with respect to all material elements necessary to sustain a recovery under some viable legal theory." <u>Mezibov v. Allen</u>, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. <u>Id</u>.

While the complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level," <u>see</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), and must create a reasonable expectation that discovery will reveal evidence to support the claim. <u>Campbell v. PMI Food Equipment Group, Inc.</u>, 509 F.3d 776, 780 (6th Cir. 2007). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. <u>Id</u>. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id</u>. at 1950. Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2). <u>Ibid</u>.

Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." <u>Twombly</u>, 550 U.S. at 555; <u>see also</u> <u>Ashcroft</u>, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); <u>Association of Cleveland Fire Fighters v. City of Cleveland, Ohio</u>, 502 F.3d 545, 548 (6th Cir. 2007).

The Licking County defendants have moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings. Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Rule 12(b)(6). <u>Tucker v. Middleburg-Legacy Place, LLC</u>, 539 F.3d 545, 549-550 (6th Cir. 2008); <u>E.E.O.C. v. J.H. Routh Packing Co.</u>, 246 F.3d 850, 851 (6th Cir. 2001). Judgment may be granted under Rule 12(c) if the court determines that no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law. <u>Tucker</u>, 539 F.3d at 549.


B. Due Process Claim

Plaintiffs' complaint concerns Medicaid benefits. The Federal Medicaid Program established by Title XIX of the Social Security Act, also known as the Medicaid Act, 42 U.S.C. §1396 <u>et</u> <u>seq</u>., is designed to provide federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons. <u>Harris v. McRae</u>, 448 U.S. 297, 308 (1980); <u>Royal Geropsychiatric Services, Inc. v. Tompkins</u>, 159 F.3d 238, 240 (6th Cir. 1998). States that choose to participate in Medicaid are subject to the statutory terms of the program and the regulations promulgated by the Secretary of Health and Human Services. <u>Id</u>. Ohio participates in the Medicaid program. <u>See</u> Ohio Rev. Code §5111.01.

To participate in Medicaid, a state must submit for approval a plan that will be effective "in all political subdivisions of the State, and, if administered by them, be mandatory upon them." 42 U.S.C. §1396a(a)(1). In addition, a state Medicaid plan must "provide for the establishment or designation of a single State agency to administer or to supervise the administration of the plan[.]" 42 U.S.C. §1396a(a)(5). Federal regulations require that the state plan "be in effect throughout the State" and "in operation statewide through a system of local offices, under ... standards ... that are mandatory throughout the State." 42 C.F.R. §431.50(a)-(b)(1). In Ohio, ODJFS has been designated as the single state agency which supervises the administration of Ohio's Medicaid program. See §5111.01 and Ohio Adm. Code §5101:1-37-01(A). ODJFS has promulgated rules for the administration of the Ohio Medicaid program which closely mirror federal Medicaid law. Ohio Adm. Code §5101:1-39 et seq.

In their complaint, plaintiffs include "Due Process" under the heading "LAWS VIOLATED." Under the Medicaid Act, beneficiaries are entitled to a "fair hearing before the State agency" in the event that their "claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. §1396a(a)(3). The right to a hearing may be enforced through an action for injunctive relief brought under 42 U.S.C. §1983 against state officials in their official capacities. Gean v. Hattaway, 330 F.3d 758, 772-73 (6th Cir. 2003). To establish a claim under §1983, a plaintiff must show: (1) that the defendant acted under color of state law; and (2) that the defendant's conduct deprived the plaintiff of rights secured by federal law. Lambert v. Hartman, 517 F.3d 433, 439 (6th Cir. 2008). Although the complaint

does not specifically refer to §1983, or any other statutory provision for that matter, the failure to correctly categorize the legal theory giving rise to a claim does not mandate dismissal if the complaint otherwise alleges facts upon which relief can be granted. Gean, 330 F.3d at 765. Therefore, this court will determine whether the complaint states a claim for a violation of due process under §1983.[1]

The complaint fails to allege facts indicating that plaintiffs were deprived of their due process rights to a hearing by any of the defendants. In fact, the complaint makes reference to two state hearings which were "sustained with compliance on May 31, 2007[.]" Complaint, Para. 13. Plaintiffs request injunctive relief, but there are no allegations in the complaint that any of the defendants have denied plaintiffs a hearing in the past. There are also no facts pleaded which would elevate the possibility of denial of a hearing in the future above the level of pure speculation. Plaintiffs have failed to allege facts sufficient to state a claim for denial of procedural due process which is plausible on its face.

Looking beyond the face of plaintiffs' complaint to their response to the motion of the Licking County defendants to determine whether plaintiffs might be able to cure the deficiencies in their complaint, the court notes that plaintiffs refer to "state hearing papers." Doc. No. 10, p. 2. Plaintiffs further state that Katrina McVicker "asked for a state hearing to talk about Medicaid"

---

[1]Although plaintiffs have not alleged that they exhausted their administrative remedies prior to filing their §1983 due process claim, courts have held that Medicaid recipients are not required to exhaust state Medicaid administrative remedies prior to filing a §1983 action. See James v. Richman, 547 F.3d 214, 217-18 (3d Cir. 2008); Roach v. Morse, 440 F.3d 53, 56-58 (4th Cir. 2006)(citing Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982)).

and that state hearings were held concerning the seizing of her private supplemental insurance proceeds to cover her Medicaid expenses on April 8, 2004, and July 8, 2004. Id., pp. 3, 5. The hearing officer took the matter of the insurance policy proceeds under advisement. Id., p. 3. Katrina McVicker also made statements at the hearing on July 8, 2004, concerning her need for a manual lift, a cushion, and nursing care for herself and her son. Id., p. 4.

Plaintiffs also refer to a state hearing on May 22, 2007. Plaintiffs contend that defendant Michelle Hartfield lied under oath at that hearing by stating that she had no idea why the state quit paying Katrina McVicker's Medicaid premium. Doc. No. 10, p. 4. However, on May 31, 2007, the state informed defendant Hartfield that she was in error. Plaintiffs' objections were "sustained with compliance" and the state was ordered to pay the Medicaid premiums. Id. When the compliance was not completed, Katrina McVicker requested another state hearing. Id. Another hearing was held on November 28, 2007, and compliance was completed in June of 2008. Id. at 4-5.

Plaintiffs further allege that Justin McVicker's Medicaid benefits were terminated because a house was placed in his name on September 29, 2005. Complaint, Para. 12.[2] Plaintiffs further allege that Justin McVicker's medicaid benefits were terminated when he turned eighteen on March 18, 2005, since his social security survivor benefits from his deceased father had ended at that time. Complaint, Para. 10. In their memorandum contra,

---

[2]Under Ohio law, a Medicaid recipient's ownership interests in resources cannot exceed the "resource limitation" established by the regulations governing eligibility. See Ohio Admin. Code §5101:1-39-05(A)(9).

plaintiffs state that on December 17, 2008, Justin McVicker was found to be disabled by an administrative law judge and therefore eligible for social security disability benefits. Id., p. 5. Plaintiffs also state that a decision was rendered on May 31, 2007, which ordered that Justin McVicker be given back Medicaid benefits. Id. Plaintiffs contend that Justin McVicker was again denied Medicaid benefits on June 22, 2007, but that benefits were restored in compliance with the May 31, 2007, order on July 11, 2008. Id., pp. 5-6.

From plaintiffs' statements, it appears that plaintiffs were afforded multiple hearings and were ultimately granted the relief they requested. No facts are alleged which would suggest that plaintiffs were denied any hearing they requested, or that defendants are currently denying plaintiffs a hearing or are likely to deny plaintiffs a hearing in the future so as to warrant prospective injunctive relief.

Plaintiffs' memorandum contra contains several references to defendant Michelle Hartfield, although plaintiffs still fail to identify exactly what position, if any, Ms. Hartfield holds at the Licking County DJFS. Plaintiffs contend that defendant Michelle Hartfield lied under oath at the hearing on May 22, 2007, when she said she had no idea why the state quit paying Katrina McVicker's Medicaid premium. Doc. No. 10, p. 4. However, since Katrina McVicker's objections to the denial of benefits were sustained on May 31, 2007, there is no indication that defendant Hartfield's testimony, even assuming it was false, deprived plaintiffs of due process in any way.

Even taking plaintiffs' other pleadings into account, plaintiffs have failed to allege sufficient facts to support a due

10

process claim.

The state defendants argue that the complaint fails to state a claim against ODJFS, an agency of the state of Ohio. They also argue that the complaint fails to specifically allege whether defendants Taft and Smith have been named in their official or individual capacities. The distinction is important because §1983 only imposes liability on any "person" who, under color of law, subjects another person to a deprivation of federal rights. A state and its officials acting in their official capacities are not "persons" under §1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any action against ODJFS, an agency of the State of Ohio, is an action against the State of Ohio, not a "person" under §1983, and therefore plaintiffs' §1983 claims against ODJFS fail. See Gean, 330 F.3d at 766.

Where no explicit statement regarding the capacity of the individual defendants appears in the pleadings, a "course of proceedings" test applies to determine whether the §1983 defendants have received notice of the plaintiffs' intent to hold them personally liable. Shepherd v. Wellman, 313 F.3d 963, 967-68 (6th Cir. 2002). This court must consider the nature of plaintiffs' claims, requests for compensatory or punitive damages, the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, and any subsequent pleadings to determine whether defendant had actual knowledge of the potential for individual liability. Id. at 968.

Plaintiffs' complaint fails to specify that they are suing defendants Smith and Taft in their individual capacities. The fact that defendant Taft is identified in the caption by his official title "(former Governor)" suggests that he is being sued in his

official capacity.  Although they allege in general terms that the "actions of the Defendant(s) are in fact willful and malicious" plaintiffs do not assert a claim for punitive damages.  They request compensatory damages in the form of reimbursement for specific medical expenses which they contend were covered by Medicaid, but do not specifically request any compensatory damages stemming from any injury caused by any acts of defendants Taft or Smith.  In their memorandum in opposition to the state defendants' motion to dismiss, plaintiffs state that defendant Taft responded to their letter of April 4, 2004, by sending them a Medicaid book on benefits.  Plaintiffs claim that the social worker who denied their benefits "were employees of his."  Doc. No. 12, pp. 1-2. This reference to defendant Taft's supervisory capacity also indicates that defendant Taft was being sued in his official capacity.  The only reference to defendant Smith is in plaintiffs' response to the Licking County defendants' motion for judgment on the pleadings, which states that plaintiff Katrina McVicker wrote to "hearing officer Gladys Smith" that she had to stay in bed without the medical equipment she requested.  Doc. No. 10, p. 4. This reference to defendant Smith's official title also indicates that she was being sued in her official capacity.

The complaint and the subsequent pleadings are insufficient to put defendants Taft and Smith on notice that they were being sued in their individual capacities.  To the extent that the §1983 action asserts a claim for monetary damages against defendants Smith and Taft acting in their official capacity, the complaint fails to state a claim under §1983 against them because they are not considered "persons" under that statute.  <u>Will</u>, 491 U.S. at 71. Accordingly, plaintiffs' complaint under §1983 against defendants

Taft and Smith must be dismissed on this ground as well.  See Shepherd, 313 F.3d at 969.[3]

Defendant Taft has also moved to dismiss plaintiffs' §1983 claims, arguing that since the complaint lacks any allegations of any wrongdoing by him, he cannot be held liable solely due to his position as former governor.  Plaintiffs argue in their memorandum contra the motion to dismiss that the other defendants "were employees of his."  Doc. No. 12, pp. 1-2.  However, the complaint fails to allege that any of the individual defendants were ODJFS employees, and is also is devoid of any facts showing that plaintiffs were denied their right to procedural due process by any ODJFS employee.  The complaint also fails to allege how defendant Taft exercised any supervisory role over any of the individual defendants who may have been Licking County DJFS employees, or how any of these other defendants acted to deny plaintiffs due process.

To establish supervisory liability under §1983, a plaintiff must show that the supervisor directly participated in the alleged misconduct or encouraged it in some way.  Sova v. City of Mt. Pleasant, 142 F.3d 898, 904 (6th Cir. 1998).  Plaintiff must show at a minimum that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct.  Comstock v. McCrary, 273 F.3d 693, 713 (6th Cir. 2001).  Simply bringing incidents of purported misconduct to the attention of

---

[3]State officials may be sued in their official capacities under §1983 for injunctive relief because such actions are not deemed to be against the State.  Will, 491 U.S. at 71 n. 10.  However, as stated previously, the complaint fails to allege any facts which would support a §1983 claim for injunctive relief to remedy a denial of due process.  In addition, since defendants Taft and Smith no longer occupy their state positions, they would not be in a position to provide or facilitate any injunctive relief awarded to plaintiffs against ODJFS.  Therefore, the complaint cannot reasonably be construed as asserting a claim for injunctive relief against defendants Taft and Smith in their official capacities.

state officials with supervisory duties is not sufficient to render them liable under §1983. <u>Lillard v. Shelby County Bd. of Educ.</u>, 76 F.3d 716, 728 (6th Cir. 1996). Conclusory allegations are not sufficient to state a constitutional violation by a supervisor. <u>Jenkins v. Wood</u>, 81 F.3d 988 (10th Cir. 1996). The mere fact that defendant Taft, as former governor, was the head of the administrative branch of government in Ohio is insufficient to render him liable for any acts on the part of any of the other named defendants, even assuming that any of them were ODJFS employees.

The Licking County defendants move to dismiss plaintiffs' due process claim to the extent that it is barred by the statute of limitations. The statute of limitations applicable to §1983 claims in Ohio is the two-year statute of limitations applicable to personal injury claims. <u>McNamara v. City of Rittman</u>, 473 F.3d 633, 636 (6th Cir. 2007). The complaint in this case was filed on November 21, 2008, and therefore, to the extent that the plaintiffs' due process claim is based on any alleged denial of due process which occurred prior to November 21, 2006, their claim is barred by the statute of limitations.

## C. Denial of Medicaid Benefits

Plaintiffs allege in their complaint that plaintiff Justin McVicker's Medicaid benefits were terminated in March of 2005 when he turned eighteen, and he was denied Medicaid benefits in September of 2005 after a house was placed in his name. Complaint Paras. 10-12. Plaintiffs further allege that plaintiff Katrina McVicker was denied Medicaid funds to pay for a manual lift, wheelchair cushion, and nursing assistance, and that defendants

14

changed the terms of two insurance policies she took out to pay for medical supplies and took insurance money from those policies. Complaint Paras. 3-6, 9. Plaintiffs do not include a claim for improper refusal to pay for medical benefits under the Medicaid program under the heading "LAWS VIOLATED." Although phrased in terms of a request for injunctive relief, plaintiffs request an order directing the defendants to pay for the purchase of a wheelchair, manual lift and wheelchair cushion and for nursing and caregiver services. Therefore, it is at least arguable that plaintiffs have asserted a claim for improper denial of certain Medicaid benefits.

The next issue is whether this claim can survive the motions to dismiss and for judgment on the pleadings. The state defendants argue that any claim for monetary damages is barred by the Eleventh Amendment. State governments and entities that can be considered arms of the state are immune from suits for money damages under the Eleventh Amendment. Alkire v. Irving, 330 F.3d 802, 814 (6th Cir. 2003). The Eleventh Amendment bars §1983 suits seeking money damages against states and against state employees sued in their official capacities. Will, 491 U.S. at 66. Suits against state officials in their official capacity for money damages are similarly barred, as a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Id. at 71. The immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law. Ernst v. Rising, 427 F.3d 351, 358-59 (6th Cir. 2005)(citing Ex parte Young, 209 U.S. 123, 155-56 (1908)). Eleventh Amendment immunity may also be abrogated by Congress when

exercising its enforcement authority under the Fourteenth Amendment. <u>Kimel v. Florida Bd. of Regents</u>, 528 U.S. 62, 80 (2000).

Under the Eleventh Amendment, the State of Ohio is immune from a suit for money damages. ODJFS is an agency of the State of Ohio, and therefore is considered an arm of the state for purposes of Eleventh Amendment immunity. Any action for monetary damages, in this case a request for the payment of Medicaid benefits or reimbursement for medical expenses, against ODJFS is barred by the Eleventh Amendment. The fact that plaintiffs' claims are couched in terms of injunctive relief does not save them. Since plaintiffs' complaint is based on past acts of denial of eligibility for benefits or past refusals to pay benefits, not on factual allegations showing conduct which is ongoing and continuing, the complaint does not fall within the doctrine of <u>Ex parte Young</u>. <u>See</u> <u>Gean</u>, 330 F.3d at 776. Because an injunction to provide funds to pay or reimburse plaintiffs for these past expenses would require payment from the state treasury, plaintiffs' claims for benefits are barred by the Eleventh Amendment. <u>Id</u>. at 777.

In determining whether the Licking County DJFS and its employees acting in their official capacity are also an arm of the State of Ohio in regard to their role in administering the Ohio Medicaid program, this court must consider factors such as: (1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding. <u>Ernst</u>, 427 F.3d at 359; <u>S.J. v. Hamilton County</u>, 374 F.3d 416, 418 (6th Cir. 2004). The most

important factor is the potential liability of the state treasury for the judgment for money damages.  <u>Hess v. Port Auth. Trans-Hudson Corp.</u>, 513 U.S. 30, 51 (1994).

As noted previously, ODJFS is by statute the sole agency in Ohio with the authority to supervise the administration of the Ohio Medicaid program.  §5111.01.  ODJFS's rules are binding on other agencies that administer components of the medicaid program.  <u>Id</u>.  Under Ohio law, the county departments of job and family services "shall establish the eligibility for medical assistance of persons living in the county, and shall notify the department of job and family services in the manner prescribed by the department."  Ohio Rev. Code §5111.01.2.  That section further provides that the county "shall be reimbursed for administrative expenditures" incurred in the administration of the Medicaid program, and that "[e]xpenditures for medical assistance shall be made from funds appropriated to the department of job and family services for public assistance subsidies."  <u>Id</u>.

These statutes reveal that the operations of the Licking County DJFS in administering the Medicaid program are performed under rules established by ODJFS, and that any monetary judgment for the payment of the Medicaid benefits sought by plaintiffs would be paid out of ODJFS (state) funds.  Thus, for purposes of this case, the Licking County DJFS is an arm of the state, not of Licking County.  The Licking County DJFS and its employees acting in their official capacities are not "persons" under §1983, and they fall within the scope of Eleventh Amendment immunity for

purposes of plaintiffs' claims for monetary relief.[4]

As noted by the Licking County defendants, many of the plaintiffs' claims for past denial of benefits are also barred by the two-year statute of limitations applicable to §1983 actions. For example, the termination of plaintiff Justin McVicker's benefits occurred in 2005, outside the limitations period. According to plaintiffs' response to the motion for judgment on the pleadings, the dispute concerning the alleged diversion of plaintiff Katrina McVicker's supplemental insurance benefits occurred in 2004. Doc. No. 10, p. 3. The denial of funds for a manual lift and chair cushion and funds for a nurse's aid and care giver also occurred in 2004. Id., p. 4. Thus, the request for injunctive relief ordering the payment of these benefits is also barred by the statute of limitations.

## D. Claims Based on Ohio Criminal Statutes

Defendants have also moved to dismiss plaintiffs' claims which are based on alleged violations of criminal statutes under Ohio law. These alleged violations cannot form the basis for a claim under §1983, because to establish a claim under that section, plaintiffs must prove that they were deprived of a right secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 48 (1988). Allegations of state law violations will not

---

[4]The complaint does not indicate whether any of the individual defendants who are possibly employees of the Licking County DJFS have been sued in their individual or official capacities. The complaint is also insufficient to notify them that they have been sued individually. Therefore, the court finds that they have been named at most in their official capacities, and any claim for monetary compensation due to a wrongful denial of benefits asserted against them is barred by Eleventh Amendment immunity. Even if the complaint were construed as alleging individual liability, any claim asserted against these defendants individually for nonpayment of benefits would fail, since these defendants in their individual capacities have no obligation under federal law to pay Medicaid benefits.

support a §1983 claim.  <u>Radvansky v. City of Olmsted Falls</u>, 395
F.3d 291, 314 (6th Cir. 2005).

To the extent that plaintiffs seek to assert tort claims under
Ohio law based on these criminal provisions, Ohio courts have held
that criminal provisions cannot form the basis for a private cause
of action.  <u>See</u> <u>Biomedical Innovations, Inc. v. McLaughlin</u>, 103
Ohio App.3d 122, 126, 658 N.E.2d 1084 (1995)(no civil damages based
on violation of criminal statute); <u>Delaney v. Skyline Lodge, Inc.</u>,
95 Ohio App.3d 264, 277, 642 N.E.2d 395 (1994)(criminal statute did
not provide a civil remedy).  Plaintiffs' claims based on Ohio
criminal statutes do not state a claim for relief.

<u>E. Discrimination Claim</u>

Plaintiffs allege in general terms at the beginning of their
complaint that they were "discriminated against."  At the end of
the complaint they allege violations of various laws, including
"discrimination."

A number of federal statutes prohibit discrimination in the
administration of programs which receive federal funding.   For
example, the Age Discrimination Act provides that "no person in the
United States shall, on the basis of age, be excluded from
participation in, be denied the benefits of, or be subject to
discrimination under, any program or activity receiving [f]ederal
financial assistance."   42 U.S.C. §6102.   Section 504 of the
Rehabilitation Act provides: "No otherwise qualified individual
with a disability ... shall, solely by reason of her or his
disability, be excluded from the participation in, be denied the
benefits of, or be subjected to discrimination under any program or
activity receiving [f]ederal financial assistance."   29 U.S.C.

§794(a). In addition, the Americans with Disabilities Act states: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. §12132. Suits against the state under these provisions are not barred by Eleventh Amendment, since Congress has specifically abrogated Eleventh Amendment immunity for purposes of actions under those provisions. See 42 U.S.C. §2000d-7(a)(1).

The Americans with Disabilities Act provision and the Rehabilitation Act provisions are enforceable through private causes of action. Barnes v. Gorman, 536 U.S. 181, 184-85 (2002). However, the Age Discrimination Act does not authorize the recovery of monetary damages; rather, the private cause of action under the Age Discrimination Act is limited to injunctive relief and the recovery of attorney's fees. See 42 U.S.C. §6104(e)(1); Montalvo-Padilla v. University of Puerto Rico, 498 F.Supp.2d 464, 467 n. 3 (D.P.R. 2007). In addition, before filing an action for injunctive relief under the Age Discrimination Act, plaintiffs must exhaust their administrative remedies as a prerequisite for jurisdiction. 42 U.S.C. §6104(e)(2)(B); 28 C.F.R. §42.736(a); Simmons v. Middle Tennessee State University, 117 F.3d 1421 (table), 1997 WL 400105 (6th Cir. July 11, 1997); Belcher v. Ohio Department of Human Services, 48 F.Supp.2d 729, 738 (S.D.Ohio 1999). Finally, the ODJFS and the Licking County DJFS are the only possible defendants to claims asserted under the above discrimination provisions, since none of these provisions provide for liability of individual officials. See Sullivan v. River Valley School Dist., 197 F.3d 804, 808 n. 1 (6th Cir. 1999)(no individual liability under 42

U.S.C. §12131); <u>Hiler v. Brown</u>, 177 F.3d 546 (6th Cir. 1999)(no individual liability under 29 U.S.C. §794(a)); <u>Rannels v. Hargrove</u>, 731 F.Supp. 1214 (E.D.Pa. 1990)(no individual liability under 42 U.S.C. §6102).

Plaintiffs do not allege in their complaint that they are members of any of the protected classes referred to above. The complaint lacks any factual allegations regarding any specific discriminatory acts. The complaint also fails to identify which of the defendants, if any, engaged in allegedly discriminatory conduct and on what grounds. Plaintiffs' other pleadings offer little more explanation of this claim. Plaintiffs allege that Justin McVicker "was discriminated against by not being allowed to have Medicaid when he was entitled to it." Doc. No. 10, p. 2. No protected classes or grounds for discrimination are specified. Plaintiffs further state that plaintiff Katrina McVicker was "treated unequal to other people because of her age disabilities and the fact that she believes [in] filing for a state hearing when she is treated unfairly." <u>Id</u>., p. 6. The discrimination statutes discussed above do not include the category "age disabilities" as being a protected class. However, even assuming that the reference is to both "age" and "disabilities" as the grounds for discrimination, this later pleading still does not state which of the defendants discriminated against plaintiffs or when the discrimination occurred, nor does it contain any facts to support these vague claims of discrimination.

The complaint provides nothing more than bare labels and conclusory statements in support of a discrimination claim. It contains no factual allegations sufficient to state a plausible claim for relief or to avoid dismissal under Rule 12(b)(6). The complaint also fails to state a claim against any of the individual

defendants under the above statutory provisions relating to discrimination, since there is no individual liability under those provisions.  In addition, the complaint fails to state a claim under the Age Discrimination Act against all of the defendants because the plaintiffs have not alleged that they have exhausted their administrative remedies, a jurisdictional prerequisite for a claim for injunctive relief to enforce §6102.

The Licking County defendants have also moved to dismiss the discrimination claim insofar as it relies on acts which fall outside the statute of limitations.  The limitations period applicable to age discrimination claims under 29 U.S.C. §794(a) and disability discrimination claims under 42 U.S.C. §12131 is the two-year period applicable to personal injury claims in Ohio.  See Disabled in Action of Pennsylvania v. Southeastern Penn. Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008)(statute of limitations for actions under the Rehabilitation Act and Title II of the Americans with Disabilities Act is the limitations provision applicable to the most analogous state law); Southerland v. Hardaway Mgt. Co., Inc., 41 F.3d 250, 255 (6th Cir. 1994)(state limitations statute for personal injury actions is applicable to discrimination action under §794(a)).  To the extent that the complaint alleges acts occurring prior to November 21, 2006, the discrimination claim is barred by the statute of limitations.

In summary, the complaint fails to state a discrimination claim for which relief may be granted.


F. Liability of Licking County DJFS

The Licking County DJFS has also moved for judgment on the pleadings due to the failure of the complaint to plead a basis for

liability on the part of the agency as a political subdivision. Assuming _arguendo_ that the Licking County DJFS is not an arm of the state, as previously discussed, but rather an arm of the county, it "cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." _Gregory v. Shelby County, Tenn._, 220 F.3d 433, 441 (6th Cir. 2000)(citing _Monell v. Dep't of Social Servs._, 436 U.S. 658, 694 (1978)). To state a claim under §1983 against a political subdivision, it must be shown that a policy of the political entity itself caused the constitutional violation at issue. _Perez v. Oakland County_, 466 F.3d 416, 430 (6th Cir. 2006). There must also be execution of a government's policy or custom which results in a constitutional tort. _Gregory_, 220 F.3d at 441. In addition, plaintiffs must demonstrate a direct casual link between the agency's action and the deprivation of federal rights. _Id_. at 442; _Board of County Comm'rs of Bryan County, Okl. v. Brown_, 520 U.S. 397, 405 (1997).

The complaint is devoid of any allegations or facts indicating the existence of an official policy which caused any constitutional violation against the plaintiffs by any of the defendants, and, if the Licking County DJFS is in fact a political subdivision, it is entitled to judgment on the pleadings on that basis.


G. Motions to Dismiss for Failure of Service under Rule 12(b)(5)

On December 26, 2008, ODJFS filed a notice of failure of service regarding a summons sent to 30 East Broad St. 31st Floor, Columbus, Ohio 43215 to Gladys Smith. In this notice, ODJFS indicated that Ms. Smith is not currently employed by ODJFS, and that service on her had therefore failed. On January 6, 2009, ODJFS filed a notice of the failure of service as to defendant

Taft. A second notice of failure of service as to defendant Taft was filed on March 25, 2009, which included a request for dismissal pursuant to Fed.R.Civ.P. 12(b)(5).

In a motion for judgment on the pleadings filed on behalf of the Licking County defendants on January 13, 2009, notice was given that plaintiffs failed to adequately service process on defendant Michael Phillips. The motion states that defendant Phillips no longer works at the Licking County DJFS. A reply filed on February 3, 2009, requested dismissal of the claims against defendant Phillips under Fed.R.Civ.P. 4(m).

Fed.R.Civ.P. 4(m) requires completion of service of process within 120 days after the filing of the complaint. Rule 4(m); Nafziger v. McDermott International, Inc., 467 F.3d 514, 521 (6th Cir. 2006). Plaintiffs bear the burden of exercising due diligence in perfecting service of process and in showing that proper service has been made. See Byrd v. Stone, 94 F.3d 217, 219 (6th Cir. 1996). Absent a waiver of service by the defendant or proper service of process, the court does not have personal jurisdiction over the defendant. See Friedman v. Estate of Presser, 929 F.2d 1151, 1156 (6th Cir. 1991).

Under Rule 4(m), dismissal of the action "shall" follow unless the "plaintiff shows good cause" for failure to meet the 120-day deadline. Rule 4(m); Nafziger, 467 F.3d at 521. Establishing good cause is the responsibility of the party opposing the motion to dismiss. Nafziger, 467 F.3d at 521. A showing of good cause requires "a demonstration of why service was not made within the time constraints." Habib v. General Motors Corp., 15 F.3d 72, 73 (6th Cir. 1994).

If the plaintiff fails to show good cause, the court must

either (1) dismiss the action, or (2) direct that service be effected within a specified time. Rule 4(m). Thus, the court has discretion to permit late service even absent a showing of good cause. See Henderson v. United States, 517 U.S. 654, 662 (1996)(noting the 1993 amendments to Rule 4(m) which accord courts discretion to enlarge the 120-day period even where no good cause is shown).

Proper service on individuals within a judicial district of the United States must conform to Fed.R.Civ.P. 4(e), which requires either service pursuant to the law of the state in which the district is located or personal service. Service may be effectuated under Ohio law by certified mail service which lists the clerk of court as the sender. Ohio R. Civ. P. 4.1. Rule 4.2 of the Local Rules of the Southern District of Ohio adopts the Ohio rule for certified mail service and also requires that certified mail service of a summons and complaint be completed in a specific manner by the clerk of this court. S.D. Ohio Civ. R. 4.2. This requires the party to address and prepare envelopes for mailing and then deliver them to the clerk, who shall cause them to be mailed. Id. The name of the sender on the back of the green card must show "Clerk, United States District Court, Southern District of Ohio" and the clerk must enter the fact of mailing and receipt of the return receipt on the docket. Id.

Plaintiffs have failed to show that they perfected service on defendants Taft, Smith and Phillips as required under Rule 4(e) and Local Rule 4.2. The docket in this case reveals that on January 9, 2009, certified mail receipts and return of service forms as to defendants Hartfield, Stewart, Phillips, Taft, Smith and Attorney General Nancy Rogers were filed with the clerk. See Doc. No. 8.

However, the docket entry states that these service documents were not mailed by the Clerk's Office as required under Local Rule 4.2. Plaintiffs have also failed to show good cause for their failure to comply with those rules. Despite the notices of plaintiffs' failure to properly serve defendants Taft, Smith and Phillips provided by those defendants which informed plaintiffs of the requirements for service under Local Rule 4.2, plaintiffs made no effort to rectify the deficiency in service.

Even if this court were inclined to excuse plaintiffs' lack of diligence, granting additional time to perfect service on the above defendants in this case would be futile in light of the insufficiency of plaintiffs' complaint. In addition, defendants Taft, Smiths and Phillips are not in a position to effectuate any injunctive relief sought by plaintiffs because defendant Taft is no longer governor, defendant Smith is not currently an employee of ODJFS, and defendant Phillips is not currently employed by the Licking County DJFS. Therefore, allowing additional time to serve these defendants would be pointless.

The claims against defendants Taft, Smith and Phillips are dismissed pursuant to Rule 4(m) for failure of service of process.

## II. Conclusion

In accordance with the foregoing, plaintiffs' motion for a temporary restraining order (Doc. No. 3) is denied. The motions to dismiss filed by the state defendants on December 26, 2008 and January 6, 2009 (Docs. Nos. 5 and 7) are granted, and all claims against defendants State of Ohio, Ohio Department of Job and Family Services, Smith and Taft are hereby dismissed. The motion for judgment on the pleadings filed by the Licking County defendants

(Doc. No. 9) is granted.  All claims against defendants Licking County Department of Job and Family Services, Michelle Hartfield, Michael Phillips, and Eric Stewart are hereby dismissed, and the clerk shall enter judgment in their favor on all of plaintiff's claims.  This action is hereby dismissed in its entirety.

Date: August 6, 2009                     _____s/James L. Graham_____
                                         James L. Graham
                                         United States District Judge